UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


MARK DAVIS,

          Plaintiff,                                           Hon. Ellen S.  Carmody

v.

                                                  Case No. 1:13-cv-143

COMMISSIONER OF
SOCIAL SECURITY,

          Defendant.

_____/

## OPINION

This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) benefits under Titles II and XVI of the Social Security Act.  On April 23, 2013, the parties agreed to proceed in this Court for all further proceedings, including an order of final judgment.  (Dkt. #12).

Section 405(g) limits the Court to a review of the administrative record and provides that if the Commissioner's decision is supported by substantial evidence it shall be conclusive.  The Commissioner has found that Plaintiff is not disabled within the meaning of the Act.  For the reasons stated below, the Court concludes that the Commissioner's decision is supported by substantial evidence.  Accordingly, the Commissioner's decision is **affirmed**.

## **STANDARD OF REVIEW**

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).

The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g).

Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Dep't of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Services*, 735 F.2d 962, 963 (6th Cir. 1984).

As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial

interference.  *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted).  This standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision.  *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## PROCEDURAL POSTURE

Plaintiff was 46 years of age on his alleged disability onset date.  (Tr. 128).  He successfully completed high school and previously worked as a foundry worker.  (Tr. 28).  Plaintiff applied for benefits on June 30, 2009, alleging that he had been disabled since September 25, 2008, due to diabetes, high blood pressure, congestive heart failure, and hypertension.  (Tr. 128-34, 177).  Plaintiff's applications were denied, after which time he requested a hearing before an Administrative Law Judge (ALJ).  (Tr. 67-127).  On September 8, 2011, Plaintiff appeared before ALJ Bradlee Welton.  (Tr. 30-63).  In a written decision dated October 21, 2011, the ALJ determined that Plaintiff was not disabled.  (Tr. 16-29).  The Appeals Council declined to review the ALJ's determination, rendering it the Commissioner's final decision in the matter.  (Tr. 1-6).  Plaintiff subsequently initiated this pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

In his initial brief, Plaintiff supports his argument for relief with the assertion that he was subsequently awarded benefits on a later application.  (Dkt. #15 at 20).  Plaintiff later acknowledged the inaccuracy of this assertion.  (Dkt. #17 at 1).

## RELEVANT MEDICAL HISTORY

Treatment notes dated September 10, 2007, indicate that Plaintiff "has not been taking his Aldactone[1] for the past couple of weeks." (Tr. 254). Treatment notes dated February 25, 2008, indicate that Plaintiff "has missed his last 2 appointments and states that he's not been taking his meds now for the past week." (Tr. 252).

On July 21, 2008, Plaintiff reported to the emergency room complaining of a headache. (Tr. 266-67). An examination revealed that Plaintiff was experiencing a "hypertensive urgency with systolic blood pressure above 200." (Tr. 264). It was further noted, however, that Plaintiff "is known to have [a] history of noncompliance and hypertension" and that "he quit his blood pressure medications 3 months ago." (Tr. 264). A CT scan of Plaintiff's head revealed "no intracranial hemorrhage or other acute intracranial process." (Tr. 258). X-rays of Plaintiff's chest revealed cardiomegaly with "no definite pulmonary vascular congestion" and "no acute pulmonary filtrate or plural effusion." (Tr. 257). Plaintiff was admitted to the hospital for treatment and discharged three days later at which point his condition was characterized as "stable." (Tr. 264). Plaintiff's care providers, however, expressed "concern" in light of Plaintiff's history of noncompliance with treatment directives. (Tr. 264).

Treatment notes dated August 11, 2008 indicate that Plaintiff "has been taking his medications regularly and consistently as they have been prescribed" and that as a result his hypertension "control is improving." (Tr. 466).

On November 4, 2008, Plaintiff reported to the emergency room complaining of

---

[1] Aldactone is used to treat high blood pressure. *See* Aldactone, available at http://www.webmd.com/drugs/drug-6671-Aldactone+Oral.aspx?drugid=6671&drugname=Aldactone+Oral (last visited January 24, 2014).

headache and neck pain. (Tr. 280-81). Plaintiff reported that he had not taken any of his high blood pressure medication "for about 1 month." (Tr. 280). Plaintiff exhibited "variable high blood pressure," but otherwise his vital signs were "normal." (Tr. 280). Plaintiff also exhibited neck and scalp tenderness, but the results of a physical examination were otherwise unremarkable. (Tr. 280). A CT examination of Plaintiff's head was "normal with no evidence of bleed, mass effect or ischemia." (Tr. 280). Plaintiff was given treatment after which his blood pressure "improved." (Tr. 281).

On November 7, 2008, Plaintiff reported to the emergency room complaining of "increasing shortness of breath." (Tr. 293). Plaintiff reported that he was "unable to afford his medications" and has not taken any of his medications "for the last 3 months." (Tr. 293). Plaintiff also reported that he was drinking "about two 24 ounce beers per day" and only recently quit smoking. (Tr. 293). X-rays of Plaintiff's chest revealed "borderline cardiomegaly...without definite evidence of failure." (Tr. 389). Because Plaintiff's blood pressure was "significantly elevated," he was admitted to the hospital and "given aggressive treatment for high blood pressure." (Tr. 320). Treatment notes reveal that "over the next few days, a fair blood pressure control was achieved" and "otherwise, [Plaintiff] did not exhibit any signs of clinical deterioration." (Tr. 320-21). Plaintiff was discharged from the hospital on November 11, 2008 at which point "he was not complaining of any chest pain or shortness of breath." (Tr. 321).

On November 9, 2008, Plaintiff participated in an echocardiography examination the results of which revealed: (1) "marked" left ventricular hypertrophy; (2) normal left ventricular systolic function with visually estimated ejection fraction of 65%; (3) decreased left ventricular compliance consistent with left ventricular diastolic dysfunction; (4) trace to mild mitral

insufficiency; and (5) trivial tricuspid insufficiency.  (Tr. 348-49).

On April 1, 2009, Plaintiff participated in a consultive examination conducted by Dr. Bret Bielawski.  (Tr. 331-33).  Plaintiff reported that he was disabled due to diabetes, high blood pressure, congestive heart failure, enlarged heart, and leg numbness.  (Tr. 331).  A physical examination revealed the following:

> No clubbing or cyanosis is detected.  There is 2+ edema in the lower extremities.  The peripheral pulses are intact.  There is no evidence of joint laxity, crepitance, or effusion.  Grip strength remains intact. Dexterity is unimpaired.  The patient could button clothing and open a door.  The patient has no difficulty getting on and off the examination table, no difficulty heel and toe walking and no difficulty squatting.  Range of motion studies of the joints is full.  Cranial nerves are intact.  Motor strength and tone are normal.  Sensory is intact to light touch and pinprick.  Reflexes are intact and symmetrical.  Romberg testing is negative.  The patient walks with a normal gait without the use of an assist device.

(Tr. 332).  The doctor concluded that:

> There is evidence of decompensating congestive heart failure on exam today with lower extremity edema.  He is slightly obese but he is a very large muscular man.

(Tr. 333).

On May 18, 2009, Plaintiff participated in a consultive examination conducted by Jeffery Kieliszewski, Ph.D.  (Tr. 368-71).  Plaintiff reported that he was disabled due to "heart failure, uncontrolled hypertension, high cholesterol, diabetes, depression."  (Tr. 368).  Plaintiff exhibited "a limited range of affect," but the results of a mental status examination were otherwise unremarkable.  (Tr. 369-70).  The doctor concluded that Plaintiff was not experiencing any

emotional impairment. (Tr. 371). Plaintiff's GAF score was rated as 60.[2] (Tr. 371).

On June 16, 2009, Plaintiff reported that "he is compliant with his medications," but "does have difficulty with diet compliance and notes that he probably eats more salty foods than he should." (Tr. 392).

On September 21, 2009, Plaintiff reported to the emergency room complaining of shortness of breath. (Tr. 410-12). Plaintiff reported that "he has not been taking his medicines for at least 2 months." (Tr. 410). Plaintiff reported that he has not been taking his medications due to "financial constraints, as well as out of frustration secondary to the perception that the medications are not helping." (Tr. 410). The doctor reported that Plaintiff "is noted to be noncompliant with his diet...does not monitor his sodium intake or his fluid intake on a regular basis." (Tr. 410). The doctor further observed that Plaintiff "drinks two 24-ounce beers per day." (Tr. 410). Plaintiff was admitted to the hospital for treatment for "hypertensive urgency secondary to medical noncompliance." (Tr. 411). During his hospitalization, Plaintiff underwent a right and left heart catheterization procedure which revealed "no significant coronary disease." (Tr. 414). Plaintiff also underwent a renal artery angiography examination which revealed "no significant disease." (Tr. 414). Plaintiff also underwent an echocardiogram examination which revealed "severe concentric left ventricular hypertrophy [with an] ejection fraction of 25% to 30%[,] no significant valvular disease." (Tr. 414). Plaintiff was discharged from the hospital on September 25, 2009 at which point his "blood pressures were much better controlled." (Tr. 414-15).

On October 6, 2009, Plaintiff participated in an echo examination the results of which

---

[2] The Global Assessment of Functioning (GAF) score refers to the clinician's judgment of the individual's overall level of functioning. American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* 32 (4th ed. 1994) (hereinafter DSM-IV). A GAF score of 60 indicates "moderate symptoms or moderate difficulty in social, occupational, or school functioning." DSM-IV at 34.

revealed: (1) moderate to severe LV dysfunction with ejection fraction of 25% to 30% with severe global hypokinesis; (2) severe concentric left ventricular hypertrophy; (3) mild to moderate mitral regurgitation; and (4) Grade 2 diastolic dysfunction. (Tr. 457). The doctor further noted that:

> There has been significant change noted compared to previous study done on 11/9/08. At that time there was only trace to mild mitral regurgitation and normal LV function. Ejection fraction has decreased from approximately 65% to the current number of 25% - 30%.

(Tr. 457).

On December 3, 2009, Dr. Richard Feenstra completed a report regarding Plaintiff's limitations. (Tr. 444-46). The doctor reported that Plaintiff can occasionally lift/carry less than 10 pounds, but is unable to frequently lift/carry any amount of weight. (Tr. 444). The doctor reported that during an 8-hour workday, Plaintiff can stand/walk for "less than 2 hours" and sit for "less than about 6 hours." (Tr. 444-45). The doctor also reported that Plaintiff's ability to utilize his upper and lower extremities was limited. (Tr. 445-46).

Treatment notes dated February 2, 2010, indicate that Plaintiff "has not been taking all of his blood pressure medicines." (Tr. 475). Treatment notes dated March 10, 2010 indicate that Plaintiff was not taking his blood pressure medications. (Tr. 476). Treatment notes dated March 10, 2010 indicate that Plaintiff was experiencing high blood pressure but that he had not been taking his high blood pressure medications for the previous week. (Tr. 629). The doctor further observed that Plaintiff was "noncompliant" with respect to his diabetes treatment. (Tr. 629).

On April 8, 2010, Plaintiff reported to the emergency room complaining of high blood sugars and increased urinary frequency. (Tr. 613-16). Plaintiff reported that he was not taking his diabetes or blood pressure medications. (Tr. 615). The doctor noted that Plaintiff has "a prior

history of medical noncompliance." (Tr. 615). X-rays of Plaintiff's chest revealed the following:

> The heart is mildly enlarged. Pulmonary vascularity is normal. There is minimal linear atelectasis in the lung bases. The lungs and plural spaces otherwise appear clear. The thoracic aorta is mildly tortuous.

(Tr. 584). Plaintiff was admitted to the hospital for treatment and was discharged two days later in improved condition. (Tr. 615-16).

On April 9, 2010, Plaintiff reported that "he was diagnosed with diabetes 15 years ago," but that "he is currently not taking any medications for diabetes and had taken nothing in the past 15 years." (Tr. 462).

Treatment notes dated July 28, 2010 indicate that Plaintiff "seems to be doing a bit better in complying with his medications and diabetic program." (Tr. 486). The doctor further noted that Plaintiff's blood pressure was also "under better control." (Tr. 486).

X-rays of Plaintiff's chest, taken February 17, 2011, revealed "no evidence of congestive heart failure." (Tr. 571).

On April 14, 2011, Plaintiff reported to the emergency room complaining of high blood sugar, polyuria, and polydipsia. (Tr. 567-68). The doctor reported that Plaintiff was not taking his medications. (Tr. 567). Plaintiff was admitted to the hospital for treatment and was discharged four days later in "stable" condition. (Tr. 568-69).

Treatment notes dated September 28, 2011 indicate that Plaintiff has not been taking his insulin "for about a month now." (Tr. 639).

At the administrative hearing, Plaintiff testified that he was presently receiving unemployment payments in the amount of $360 every two weeks. (Tr. 40). Plaintiff reported that he was presently living with his sister. (Tr. 39-40). Plaintiff testified that he had continued to smoke

9

until "about seven months" ago. (Tr. 47). Plaintiff also reported that he reduced his alcohol consumption to "probably about one can of beer a week." (Tr. 47-48). Plaintiff testified that with his unemployment income he was able to afford his medications and that "as long as I stay on the medication I do fairly well." (Tr. 48). Plaintiff reported that he was unable to work due to his diabetes and heart condition as well as neck pain and leg numbness. (Tr. 51). With respect to his neck pain, Plaintiff acknowledged that he has never had an x-ray or MRI examination. (Tr. 52). Plaintiff reported that he did not suffer any type of neck injury, but instead stated that his neck only began hurting "recently." (Tr. 52-53). Plaintiff reported that he spends his time working on the computer, watching television, or sitting on the front porch. (Tr. 55-56).

## ANALYSIS OF THE ALJ'S DECISION

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[3] If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional

---

[3] 1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. 404.1520(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. 404.1520(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. 404.1520(d));

4. If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. 404.1520(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. 404.1520(f)).

impairment as well as an exertional impairment, both are considered in determining his residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and he can satisfy his burden by demonstrating that his impairments are so severe that he is unable to perform his previous work, and cannot, considering his age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528. While the burden of proof shifts to the Commissioner at step five, Plaintiff bears the burden of proof through step four of the procedure, the point at which his residual functioning capacity (RFC) is determined. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (ALJ determines RFC at step four, at which point claimant bears the burden of proof).

The ALJ determined that Plaintiff suffers from (1) diabetes; (2) hypertension; (3) obesity; and (4) cardiomyopathy, severe impairments that whether considered alone or in combination with other impairments, failed to satisfy the requirements of any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. (Tr. 18-20). With respect to Plaintiff's residual functional capacity, the ALJ determined that Plaintiff retained the capacity to perform sedentary work subject to the following limitations: (1) he must avoid temperature extremes; (2) he must avoid concentrated exposure to dust, fumes, odors, chemicals, and gases; and (3) he must avoid hazards such as machinery and heights. (Tr. 20).

The ALJ determined that Plaintiff could not perform his past relevant work, at which point the burden of proof shifted to the Commissioner to establish by substantial evidence that a significant number of jobs exist in the national economy which Plaintiff could perform, his

limitations notwithstanding. *See Richardson*, 735 F.2d at 964. Relying on the Medical-Vocational Guidelines, the ALJ found that Plaintiff retained the ability to perform a significant number of jobs. Accordingly, the ALJ concluded that Plaintiff was not disabled as defined by the Social Security Act.

## I.      The ALJ Properly Evaluated the Medical Evidence

Plaintiff's treating physician, Dr. Feenstra, reported that Plaintiff can occasionally lift/carry less than 10 pounds, but is unable to frequently lift/carry any amount of weight. The doctor also reported that during an 8-hour workday, Plaintiff can stand/walk for "less than 2 hours" and sit for "less than about 6 hours." The doctor further reported that Plaintiff's ability to utilize his upper and lower extremities was limited. The ALJ accorded "reduced weight" to Dr. Feenstra's opinion. (Tr. 27). Plaintiff argues that he is entitled to relief because the ALJ failed to articulate sufficient reasons for affording less that controlling weight to Dr. Feenstra's opinion.

The treating physician doctrine recognizes that medical professionals who have a long history of caring for a claimant and his maladies generally possess significant insight into his medical condition. *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). An ALJ must, therefore, give controlling weight to the opinion of a treating source if: (1) the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) the opinion "is not inconsistent with the other substantial evidence in the case record." *Gayheart v. Commissioner of Social Security*, 710 F.3d 365, 375-76 (6th Cir. 2013) (quoting 20 C.F.R. § 404.1527).

Such deference is appropriate, however, only where the particular opinion "is based upon sufficient medical data." *Miller v. Sec'y of Health and Human Services*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health and Human Services*, 839 F.2d 232,

12

235 n.1 (6th Cir. 1987)).  The ALJ may reject the opinion of a treating physician where such is unsupported by the medical record, merely states a conclusion, or is contradicted by substantial medical evidence.  *See Cohen*, 964 F.2d at 528; *Miller v. Sec'y of Health and Human Services*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health and Human Services*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)); *Cutlip v. Sec'y of Health and Human Services*, 25 F.3d 284, 286-87 (6th Cir. 1994).

If an ALJ accords less than controlling weight to a treating source's opinion, the ALJ must "give good reasons" for doing so.  *Gayheart*, 710 F.3d at 376.  Such reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight."  This requirement "ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule."  *Id.* (quoting *Wilson v. Commissioner of Social Security*, 378 F.3d 541, 544 (6th Cir. 2004)).  Simply stating that the physician's opinions "are not well-supported by any objective findings and are inconsistent with other credible evidence" is, without more, too "ambiguous" to permit meaningful review of the ALJ's assessment.  *Gayheart*, 710 F.3d at 376-77.

If the ALJ affords less than controlling weight to a treating physician's opinion, the ALJ must still determine the weight to be afforded such.  *Id.* at 376.  In doing so, the ALJ must consider the following factors: (1) length of the treatment relationship and frequency of the examination, (2) nature and extent of the treatment relationship, (3) supportability of the opinion, (4) consistency of the opinion with the record as a whole, (5) the specialization of the treating source, and (6) other relevant factors.  *Id.* (citing 20 C.F.R. § 404.1527).  While the ALJ is not required to

explicitly discuss each of these factors, the record must nevertheless reflect that the ALJ considered those factors relevant to her assessment. *See, e.g., Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007); *Undheim v. Barnhart*, 214 Fed. Appx. 448, 450 (5th Cir., Jan. 19, 2007).

The ALJ found that "the majority of [Dr. Feenstra's] opinion is consistent with the record as a whole. (Tr. 27). The ALJ declined to adopt, however, two aspects of the doctor's opinion: (1) that Plaintiff can sit for less than six hours during a workday, and (2) that Plaintiff's ability to use his upper extremities is limited. (Tr. 27). The ALJ discounted these particular assertions on the ground that they were inconsistent with both the medical evidence and Plaintiff's reported activities. This conclusion is supported by substantial evidence as the discussion above makes clear.

## II.        Plaintiff does not Meet the Requirements of a Listed Impairment

The Listing of Impairments, detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1, identifies various impairments which, if present to the severity detailed therein, result in a finding that the claimant is disabled. Plaintiff next argues that he is entitled to relief because he satisfies the requirements of Section 4.02(a) of the Listing of Impairments.

A claimant satisfies Section 4.02(a) when he experiences "chronic heart failure," as defined therein, "*while on a regimen of prescribed treatment*." 20 C.F.R., Part 404, Subpart P, Appendix 1, § 4.02; *see also*, *e.g., Draggett v. Colvin*, 2013 WL 5488910 at *3 (W.D.N.Y., Sept. 30, 2013) (recognizing that Section 4.02 is satisfied only where a claimant suffers heart failure despite adherence to a regimen of prescribed treatment); *Childs v. Commissioner of Social Security*, 2013 WL 265090 at *4 (S.D. Ohio, Jan. 23, 2013) (same).

Even if the Court assumes that Plaintiff experienced chronic heart failure, something which is not established on the present record, there is no evidence that Plaintiff suffered such despite adhering to a regimen of prescribed treatment. To the contrary, as the evidence makes abundantly clear, Plaintiff consistently disregarded the advice and instructions of his care providers. The ALJ found that Plaintiff failed to satisfy the requirement of this impairment. This determination is supported by substantial evidence.

III.     **The ALJ Properly Relied on the Medical-Vocational Guidelines**

The medical-vocational guidelines, also known as the "grids," consider four factors relevant to a particular claimant's employability: (1) residual functional capacity, (2) age, (3) education, and (4) work experience. 20 C.F.R., Part 404, Subpart P, Appendix 2. Social Security regulations provide that "[w]here the findings of fact made with respect to a particular individual's vocational factors and residual functional capacity coincide with all the criteria of a particular rule, the rule directs a conclusion as to whether the individual is or is not disabled." 20 C.F.R., Part 404, Subpart P, Appendix 2, § 200.00. At step five of the sequential process, the ALJ found Plaintiff not disabled pursuant to Rule 201.21 of the grids.[4] Plaintiff argues that it was inappropriate for the ALJ to rely on the grids in this matter because he suffers from non-exertional impairments.

The medical-vocational guidelines only take into consideration a claimant's exertional (i.e., strength) limitations. Accordingly, where a claimant suffers from "nonexertional limitations that *significantly restrict* the range of available work," use of the grids alone to make a disability

---

[4] This particular rule provides that a younger individual (age 45-49) with a high school education whose past relevant work did not involve skills which are transferrable to other work is not disabled. 20 C.F.R., Part 404, Subpart P, Appendix 2 § 201.21.

determination is inappropriate. *See Jordan v. Commissioner of Social Security*, 548 F.3d 417, 424

(6th Cir. 2008) (emphasis added). As the Sixth Circuit observed:

> [W]here a claimant has nonexertional impairments alone or in combination with exertional limitations, the ALJ must treat the grids as only a framework for decisionmaking, and must rely on other evidence to determine whether a significant number of jobs exist in the national economy that a claimant can perform. Reliance upon the grids in the presence of nonexertional limitations requires reliable evidence of some kind that the claimant's nonexertional limitations do not significantly limit the range of work permitted by [his] exertional limitations.

*Id.* at 424 (internal citations omitted).

With respect to whether he could resolve Plaintiff's application for benefits by relying

solely on the grids, the ALJ, relying on Social Security Rulings 85-15 and 96-9p, concluded that the

non-exertional limitations Plaintiff experiences "would not result in significant erosion of the

sedentary occupational base." (Tr. 28-29).

Social Security Ruling 85-15 provides that where a claimant experiences non-

exertional restrictions to avoid environmental restrictions, such as those identified by the ALJ, "the

impact on the broad world of work would be minimal because most job environments do not involve

great noise, amounts of dust, etc." Social Security Ruling 85-15, Titles II and XVI: Capability to do

Other Work - the Medical-Vocational Rules as a Framework for Evaluating Solely Nonexertional

Impairments, 1985 WL 56857 at *4-5 (Soc. Sec. Admin., 1985).

Likewise, Social Security Ruling 96-9p provides that a limitation to avoid workplace

hazards such as machinery, heights, chemicals, gases, etc. "would not, by itself, result in a significant

erosion of the occupational base" for sedentary work. Social Security Ruling 96-9p, Titles II and

XVI: Determining Capability to do Other Work - Implications of a Residual Functional Capacity for

less than a Full Range of Sedentary Work, 1996 WL 374185 at *8-9 (Soc. Sec. Admin., 1996).

The ALJ's interpretation of these two Social Security Administrations rulings is accurate and, therefore, constitutes "reliable evidence" that Plaintiff's nonexertional limitations do not significantly limit the range of sedentary work which he can perform. Accordingly, the ALJ properly relied on the grids to determine that Plaintiff was not entitled to benefits.

IV.        **The ALJ Properly Discounted Plaintiff's Subjective Allegations**

Plaintiff testified at the administrative hearing that he was unable to work due to his various impairments. The ALJ discounted Plaintiff's testimony for many reasons, including Plaintiff's repeated refusal to take his prescribed medications. Plaintiff argues that because he was unable to purchase his medications, the ALJ's reliance on his failure to take his medications was inappropriate.

As the Sixth Circuit has long recognized, "pain alone, if the result of a medical impairment, *may* be severe enough to constitute disability." *King v. Heckler*, 742 F.2d 968, 974 (6th Cir. 1984) (emphasis added); *see also*, *Grecol v. Halter*, 46 Fed. Appx. 773, 775 (6th Cir., Aug. 29, 2002) (same). As the relevant Social Security regulations make clear, however, a claimant's "statements about [his] pain or other symptoms will not alone establish that [he is] disabled." 20 C.F.R. § 404.1529(a); *see also*, *Walters v. Commissioner of Social Security*, 127 F.3d 525, 531 (6th Cir. 1997) (quoting 20 C.F.R. § 404.1529(a)) *Hash v. Commissioner of Social Security*, 309 Fed. Appx. 981, 989 (6th Cir., Feb. 10, 2009). Instead, as the Sixth Circuit has established, a claimant's assertions of disabling pain and limitation are evaluated pursuant to the following standard:

First, we examine whether there is objective medical evidence of an

underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

*Walters*, 127 F.3d at 531 (citations omitted). This standard is often referred to as the *Duncan* standard. *See Workman v. Commissioner of Social Security*, 105 Fed. Appx. 794, 801 (6th Cir., July 29, 2004).

Accordingly, as the Sixth Circuit has repeatedly held, "subjective complaints may support a finding of disability only where objective medical evidence confirms the severity of the alleged symptoms." *Id.* (citing *Blankenship v. Bowen*, 874 F.2d 1116, 1123 (6th Cir. 1989)). However, where the objective medical evidence fails to confirm the severity of a claimant's subjective allegations, the ALJ "has the power and discretion to weigh all of the evidence and to resolve the significant conflicts in the administrative record." *Workman*, 105 Fed. Appx. at 801 (citing *Walters*, 127 F.3d at 531).

In this respect, it is recognized that the ALJ's credibility assessment "must be accorded great weight and deference." *Workman*, 105 Fed. Appx. at 801 (citing *Walters*, 127 F.3d at 531); *see also*, *Heston v. Commissioner of Social Security*, 245 F.3d 528, 536 (6th Cir. 2001) ("[i]t is for the [Commissioner] and his examiner, as the fact-finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony"). It is not for this Court to reevaluate such evidence anew, and so long as the ALJ's determination is supported by substantial evidence, it must stand. The ALJ found Plaintiff's subjective allegations to not be fully credible, a finding that should not be lightly disregarded. *See Varley v. Sec'y of Health and Human Services*, 820 F.2d 777, 780 (6th Cir. 1987). In fact, as the Sixth Circuit recently stated, "[w]e have held that an administrative

law judge's credibility findings are virtually unchallengeable." *Ritchie v. Commissioner of Social Security*, - - - Fed. Appx. - - -, 2013 WL 5496007 at *3 (6th Cir., Oct. 4, 2013) (citation omitted).

Plaintiff's argument is unpersuasive. As the ALJ correctly observed, Plaintiff's care providers on numerous occasions provided Plaintiff with information which would have enabled him to obtain his prescriptions for free or at minimal cost. (Tr. 281, 320, 460-61, 482, 616, 648-49, 652). That Plaintiff refused to take advantage of these opportunities, yet continued to purchase beer and cigarettes, is an appropriate consideration when assessing Plaintiff's credibility. *See, e.g., Trenholme v. Colvin*, 2014 WL 172143 at *22-23 (M.D. Tenn., Jan. 15, 2014) (claimant's testimony properly rejected where "[a]lthough the claimant frequently stated he could not afford his medication, he was able to purchase cigarettes and pay for a cell phone"); *Moore v. Colvin*, 2013 WL 5873298 at *3 (E.D. Ky., Oct. 30, 2013) (same); *Ceasar v. Commissioner of Social Security*, 2013 WL 5177143 at *3 (S.D. Ohio, Sept. 13, 2013) (same). This argument is, therefore, rejected.

In a related argument, Plaintiff asserts that he is entitled to relief because the ALJ relied on "meaningless boilerplate" in discrediting Plaintiff's subjective allegations. Specifically, Plaintiff points to the following language from the ALJ's opinion:

> [a]fter careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual capacity assessment.

(Tr. 24).

Plaintiff argues that the ALJ's reliance on "meaningless boilerplate clearly demonstrates that his opinion is not supported by substantial evidence." In support of this argument,

Plaintiff cites to *Bjornson v. Astrue*, 671 F.3d 640 (7th Cir. 2012), in which the Seventh Circuit criticized the use of the aforementioned language as "meaningless boilerplate." *Id.* at 645. As has been recognized, however, the shortcoming with the ALJ's decision that was at issue in *Bjornson* was that the ALJ in that case "used the boilerplate as [his] only statement about the claimant's credibility." *Johnson v. Commissioner of Social Security*, 2013 WL 1703894 at *4 (W.D. Mich., Apr. 19, 2013). On the other hand, where such boilerplate is accompanied by appropriately detailed and focused analysis, consistent with the aforementioned standard, the presence of the offending boilerplate does not constitute grounds for relief. *Id.* Here, the ALJ discussed the evidence of record at length and detailed his rationale for discounting Plaintiff's subjective allegations. The Court, therefore, rejects this argument.

## V.       Plaintiff was Not Deprived of a Fair Hearing

Finally, Plaintiff asserts that he is entitled to relief because, Colleen Clarkson, the attorney who represented him at the administrative hearing was "incompetent." Specifically, Plaintiff asserts that Clarkson failed to ask any questions during the hearing and failed to supplement the record following the hearing. Plaintiff has identified no authority supporting this particular argument. Plaintiff has likewise failed to articulate what questions his attorney should have asked or what evidence such questions would have produced or developed.

A review of the administrative hearing transcript reveals that the ALJ questioned Plaintiff at length concerning the evidence and his various allegations. (Tr. 38-63). While Clarkson did not directly examine Plaintiff, she did participate in the hearing, answering questions from the ALJ, interjecting information concerning the record, and arguing on behalf of Plaintiff's claim.

While Plaintiff's present counsel may have conducted the administrative hearing differently, the Court discerns nothing in Clarkson's performance that can fairly be characterized as unprofessional, incompetent, or prejudicial to Plaintiff's cause.

As for the evidence which Plaintiff asserts counsel should have submitted, Plaintiff faults his attorney for failing to submit evidence concerning his allegation that he satisfies Section 4.02(a) of the Listing of Impairments. As discussed above, however, this particular claim is without merit and Plaintiff has failed to identify evidence that could reasonably have resulted in a different conclusion as to that claim.

Plaintiff was entitled to a "full and fair" hearing before the ALJ. *See, e.g., Ferriell v. Commissioner of Social Security*, 614 F.3d 611, 620 (6th Cir. 2010). Plaintiff has failed to demonstrate that he was deprived of this right. Accordingly, this argument is rejected.

## CONCLUSION

For the reasons articulated herein, the Court concludes that the ALJ's decision is supported by substantial evidence. Accordingly, the Commissioner's decision is **affirmed**. A judgment consistent with this opinion will enter.

Date: January 31, 2014                    /s/ Ellen S. Carmody
                                          ELLEN S. CARMODY
                                          United States Magistrate Judge

21